SEALED

1
2
3
4
5

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

| | |
|---|---|
| In the Matter of the Tracking of the Cellular Telephone Assigned Call Number (602) 654-9740 with International Mobile Subscriber Identifier (IMSI) number 310260054580659. | Case No. 21-    9156 MB<br><br>**TRACKING WARRANT**<br><br>**(Under Seal)** |

9
10
11
12
13
14

15          This matter having come before the Court pursuant to an Application for Tracking

16    Warrant submitted pursuant to Title 18, United States Code (U.S.C.), Section

17    2703(c)(1)(A) and Federal Rule Criminal Procedure 41, to obtain information about the

18    location of the cellular telephone assigned call number (602) 654-9740 with International

19    Mobile Subscriber Identifier ("IMSI") number 310260054580659 (hereafter referred to as

20    the "Target Cellular Telephone"), whose service provider is T-Mobile USA (hereafter

21    referred to, collectively with any other communication service provider as defined in 18

22    U.S.C. § 2510(15) which may provide service to the Target Cellular Telephone during the

23    authorization period, as the "Service Provider"), and the Court having found that the

24    Application for Tracking Warrant and Affidavit filed in support thereof establish probable

25    cause to believe the requested location information will constitute evidence of violations

26    of federal law,

27          **IT IS HEREBY ORDERED** that the Service Provider shall disclose to agents of

28    the United States Drug Enforcement Administration ("DEA") (hereafter referred to as the

1    "Requesting Agency") all information about the location of the Target Cellular Telephone
2    that is within the possession, custody, or control of Service Provider, including all available
3    E-911 Phase II data, GPS data, latitude-longitude data, and other precise location
4    information, as well as all data about which "cell towers" (i.e., antenna towers covering
5    specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal
6    from the Target Cellular Telephone (hereafter referred to as the "Location Information").

7         **IT IS FURTHER ORDERED** that the Service Provider shall assist agents of the
8    Requesting Agency by furnishing all information, facilities, and technical assistance
9    necessary to accomplish the collection of the Location Information unobtrusively and with
10   a minimum of interference with Service Provider's services, including by initiating a signal
11   to determine the location of the Target Cellular Telephone on Service Provider's network
12   or with such other reference points as may be reasonably available, and at such intervals
13   and times directed by the government.

14        **IT IS FURTHER ORDERED** that the Service Provider shall have no more than
15   10 calendar days from the date of the Court's Order to begin furnishing the Requesting
16   Agency with the Location Information.

17        **IT IS FURTHER ORDERED** that the Service Provider shall furnish the requested
18   Location Information for a period of 45 days from the date of the Court's Order, during all
19   times of the day and night.

20        **IT IS FURTHER ORDERED** that the Requesting Agency shall reasonably
21   compensate Service Provider for reasonable expenses incurred in furnishing such facilities
22   or assistance.

23        **IT IS FURTHER ORDERED** that the authorization to release the Requested
24   Information shall be without geographic limits.

25        **IT IS FURTHER ORDERED** that this Order does not authorize the Service
26   Provider to disclose the contents of any communications occurring over the Target Cellular
27   Telephone.

28

- 2 -

1    **IT IS FURTHER ORDERED** that this authorization shall apply not only to the

2    Target Cellular Telephone, but also to any changed telephone numbers assigned to any

3    device bearing the same Electronic Serial Number ("ESN"), Mobile Electronic Identity

4    Number ("MEIN"), International Mobile Subscriber Identifier (IMSI), Subscriber Identity

5    Module ("SIM"), International Mobile Station Equipment Identity (IMEI), Mobile

6    Identification Number ("MIN"), or Mobile Subscriber Integrated Services Digital Network

7    Number ("MSISDN"), as applicable, within the 45-day period.

8    **IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. § 2703(c)(1)(A), that the

9    Service Provider shall provide to the Requesting Agency call detail records with cell site

10   information (tower and sector data) for the Target Cellular Telephone for the 30 days

11   preceding the date of the Court's Order.

12   **IT IS FURTHER ORDERED** that the officer executing the warrant shall return

13   the warrant to a United States Magistrate Judge on criminal duty in the District of Arizona

14   within 10 days after the 45-day authorization period has ended, or within 10 days after the

15   Requesting Agency determines it will no longer seek to obtain the Location Information,

16   whichever occurs first. In making the return, the officer executing the warrant shall note

17   the date and time the Court's Order was served on the Service Provider, the date and time

18   the Requesting Agency began receiving the Location Information, and the date and time

19   the Requesting Agency stopped receiving the Location Information.

20   **IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. § 3103a(b) and Fed. R. Crim.

21   P. 41(1)(C), that the officer executing the tracking warrant shall serve a copy of the warrant

22   and return on the person whose telephone was tracked within 30 days after the collection

23   authorized by the warrant has been completed.  The Court finds there is reasonable cause

24   to believe that providing immediate notification of the warrant may have an adverse result,

25   as defined in 18 U.S.C. § 2705.  The Court finds providing immediate notice to the

26   subscriber or user of the Target Cellular Telephone would seriously jeopardize the ongoing

27   investigation, as such a disclosure would give that person an opportunity to destroy

28   evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See*

- 3 -

1    18 U.S.C. § 3103a(b)(1).

2    **IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d)(2),

3    that the Service Provider, its agents and employees, and any other person or entity whose

4    assistance facilitates the execution of this order, shall not disclose in any manner, directly

5    or indirectly, by any action or inaction, to the subscriber or any other person, the existence

6    of this Application for Tracking Warrant and Order, the release of the Location

7    Information, or the investigation, for 180 days from the expiration of the Court's Order,

8    unless further extensions are granted by the Court, except that the Service Provider may

9    disclose the Order to an attorney for the Service Provider for the purpose of receiving legal

10   advice, because there is reason to believe that such notification will endanger the life or

11   physical safety of a confidential source and/or undercover officer, prompt the target(s) to

12   flee from prosecution or destroy or tamper with evidence, prompt the intimidation of

13   witnesses, and/or otherwise seriously jeopardize an investigation.

14   **IT IS FURTHER ORDER** that the Application for Tracking Warrant, the Affidavit

15   in support thereof, this Order, and the Tracking Warrant Return, except for complying with

16   Fed. R. Crim. P. 41(f), be sealed for 180 days from the expiration of the warrant unless

17   extensions are granted by the Court.

18                                 17th
19          Dated this _____ day of June, 2021.

20
21                                 _____
                                   HONORABLE EILEEN S. WILLETT
22                                 UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

SEALED

1  GLENN B. McCORMICK
   Acting United States Attorney
2  District of Arizona
   William H. Bryan III
3  Assistant U.S. Attorney
   Florida State Bar No. 0045012
4  Two Renaissance Square
   40 North Central Avenue, Suite 1800
5  Phoenix, Arizona  85004
   Telephone: 602-514-7500
6  Email: William.Bryan@udoj.gov
   Attorneys for Plaintiff
7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE DISTRICT OF ARIZONA

10
   | In the Matter of the Tracking of the Cellular | Case No. 21-  9156 MB |
11 | Telephone  Assigned  Call  Number  (602) | |
   | 654-9740   with   International   Mobile | **APPLICATION FOR** |
12 | Subscriber   Identifier   (IMSI)   number | **TRACKING WARRANT** |
   | 310260054580659 | |
13 | | **(Under Seal)** |

14

15

16        Assistant United States Attorney William H. Bryan III ("Applicant"), an attorney

17  for the government, respectfully submits this application to the Court for a tracking

18  warrant, pursuant to Title 18, United States Code (U.S.C.), Section 2703(c)(1)(A) and

19  Federal Rule Criminal Procedure 41, to obtain information about the location of the cellular

20  telephone assigned call number (602) 654-9740 with International Mobile Subscriber

21  Identifier ("IMSI") number 310260054580659 (hereafter referred to as the "Target Cellular

22  Telephone"), whose service provider is T-Mobile USA (hereafter referred to, collectively

23  with any other communication service provider as defined in 18 U.S.C. § 2510(15) which

24  may provide service to the Target Cellular Telephone during the authorization period, as

25  the "Service Provider").

26        In support of this application, Applicant states the following:

27        1.      Applicant is an "attorney for the government" as defined in Fed. R. Crim. P.

28  1(b)(1)(B), and therefore, pursuant to Fed. R. Crim. P. 41(b) and 18 U.S.C. § 3122(b)(1),

may apply for a search and seizure warrant and a pen register, trap and trace device.

2.    The United States Drug Enforcement Administration ("DEA") (hereafter referred to as the "Requesting Agency") is conducting a criminal investigation of possible violations of 18 U.S.C. § 1956 (money laundering) and 21 U.S.C. 843(b) (knowingly or intentionally using any communication facility in committing violation(s) of Title 21), as set forth in the attached Affidavit by Special Agent Efrain A. Interiano.  Applicant submits that the facts set forth in the attached Affidavit establish probable cause to believe that a target of the investigation is using the Target Cellular Telephone in furtherance of the subject offenses.

3.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), and 2703(c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) that … has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As described in the attached Affidavit, the investigation pertains to federal crimes committed in Arizona.  As a result, the warrant can be issued and executed in Arizona regardless of where the Service Provider and Target Cellular Telephone are located.

4.    Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

**AUTHORIZATION REQUEST**

5.     Applicant requests that the Court direct Service Provider to disclose to the government all information about the location of the Target Cellular Telephone that is within the possession, custody, or control of Service Provider, including all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Cellular Telephone (hereafter referred to as the "Location Information").

6.     Applicant further requests that the Court direct Service Provider to furnish the government with all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Service Provider's services, including by initiating a signal to determine the location of the Target Cellular Telephone on Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

7.     Applicant further requests that the Court direct Service Provider to furnish the requested Location Information for a period of 45 days from the date of the Court's Order, and during all times of the day and night, owing to the potential need to locate the Target Cellular Telephone outside of daytime hours.

8.     Applicant further requests that the authorization given be intended to apply not only to the Target Cellular Telephone, but also to any changed telephone numbers assigned to any device bearing the same Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), International Mobile Subscriber Identifier (IMSI), Subscriber Identity Module ("SIM"), International Mobile Station Equipment Identity (IMEI), Mobile Identification Number ("MIN"), or Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), as applicable, within the 45-day period.

- 3 -

9.      Applicant further requests that the Court order the Service Provider, pursuant to 18 U.S.C. § 2703(c)(1)(A), to provide to the Requesting Agency call detail records with cell site information for the Target Cellular Telephone for the 30 days preceding the date of the Court's Order.

10.     Pursuant to Fed. R. Crim. P. 41(f)(1)(C), the officer executing the warrant must serve a copy of the tracking warrant and return on the person whose telephone was tracked. Applicant requests, pursuant to 18 U.S.C. § 3103a(b) and Fed. R. Crim. P. 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the person until 30 days after the collection authorized by the warrant has been completed.   There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice to the subscriber or user of the Target Cellular Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).   The proposed warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2).

11.     Applicant further requests, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d)(2), that the Court's Order direct the Service Provider, its agents and employees, and any other person or entity whose assistance facilitates the execution of this order, not to disclose in any manner, directly or indirectly, by any action or inaction, to the subscriber or any other person, the existence of this Application for Tracking Warrant and Order, the release of the Location Information, or the investigation, for 180 days from the expiration of the Court's Order, unless further extensions are granted by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice, because there is reason to believe that such notification will endanger the life or physical safety of a confidential source and/or undercover officer, prompt the target(s) to flee from prosecution or destroy or tamper with evidence, prompt the intimidation of

- 4 -

1    witnesses, and/or otherwise seriously jeopardize an investigation.

2        12.    For the foregoing reasons, Applicant further requests that the Court order this

3    Application for Tracking Warrant, the Affidavit in support thereof, the Court's Order, and

4    the Tracking Warrant Return, except for complying with Fed. R. Crim. P. 41(f), be sealed

5    for 180 days from the expiration of the warrant unless extensions are granted by the Court.

6        Respectfully submitted this 17th day of June, 2021.

7
8                                                 GLENN B. McCORMICK
                                                  Acting United States Attorney
9                                                 District of Arizona
10                           **WILLIAM**           Digitally signed by
                                                  WILLIAM BRYAN
11                           **BRYAN**             Date: 2021.06.17
                                                  15:35:54 -07'00'
12                                                William H. Bryan III
                                                  Assistant U.S. Attorney
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Efrain A. Interiano, Special Agent of the United States Drug Enforcement Administration, Phoenix, Arizona, being duly sworn, hereby depose and state:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1.      Your Affiant makes this Affidavit in support of an application for a tracking warrant under Federal Rule of Criminal Procedure 41 and Title 18, United States Code (U.S.C.), Section 2703(c)(1)(A), to obtain information regarding the location of the cellular telephone assigned call number (602) 654-9740, with International Mobile Subscriber Identity (IMSI) number 310260054580659 (hereafter referred to as the "Target Cellular Telephone"), whose service provider is T-Mobile USA (hereafter referred to as the "Service Provider"). The Target Cellular Telephone is subscribed to Jose Jesus Carranza, listed billing address 17617 N. 9th Street, Apt. 1143, Phoenix, AZ 85022, and was activated on July 3, 2020.  The Target Cellular Telephone is believed to be utilized by Jose Jesus Carranza (hereinafter "CARRANZA").

2.      Your Affiant is a Special Agent with the United States Drug Enforcement Administration ("DEA") and has been so employed since August 2015. Prior to your Affiant's law enforcement career, your Affiant received a Bachelor's of Science degree in Counseling-Psychology from Toccoa Falls College in Georgia.

3.      In June 2008, your Affiant was employed with the Canton Police Department ("CPD") in Georgia for approximately seven (7) years.  While employed with CPD, your Affiant served as a police officer, a Narcotics Agent with Cherokee County Multi-Agency Narcotics Squad, and as a Task Force Officer ("TFO") assigned to the DEA Atlanta-Carolinas High Intensity Drug Trafficking Area ("HIDTA"). As a TFO of the DEA, your Affiant conducted the same law enforcement-related activities and held the same responsibilities as that of a Special Agent of the DEA.

4.      In August 2015, your Affiant began employment as a Special Agent with the DEA and your Affiant completed the 18-week Basic Agent Training course offered by the DEA Academy in Quantico, Virginia.  While attending the DEA Academy, your Affiant

received comprehensive instruction in investigative techniques, drug identification by sight and odor, methods used to package, market and consume drugs, drug testing, informant handling, evidence handling, surveillance, search and seizure, and the laws pertaining to drug investigations.

5.     During the course of your Affiant's law enforcement career, he has investigated drug-trafficking and weapon-smuggling activity, as well as money laundering organizations.   Your Affiant has been involved in the execution of search warrants involving the seizure of controlled substances, documents associated with the sale of controlled substances, and the proceeds from the sale of drugs.

6.     By virtue of your Affiant's employment in law enforcement, he has performed various tasks, to include:

    a.     Conducting surveillance operations - observing and recording movements of persons suspected of trafficking drugs;

    b.     Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of drugs, as well as the distribution of money and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

    c.     Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments; and

    d.     Conducting undercover operations – infiltrating drug-trafficking and money laundering organizations.

7.     In the course of conducting drug-related investigations, your Affiant has personally interviewed confidential informants and persons involved in the distribution of drugs.  In addition, your Affiant has provided surveillance in support of state and federal investigations that used court-authorized interceptions of wire and electronic communications.  Your Affiant has also consulted with other experienced investigators

concerning the practices of drug-trafficking organizations and the strategies utilized to investigate them.

8.     The facts contained in this Affidavit are based in part on information provided to your Affiant by other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; intercepted calls and/or text messages; information learned through seizures of contraband; and analysis of telephone toll records. Your Affiant also relies on my own experience, training, and background in evaluating this information.

9.     Since this Affidavit is being submitted for the limited purpose of securing authorization to obtain information about the location of a cellular telephone, your Affiant has not included each and every fact known to me concerning this investigation. Your Affiant has set forth only those facts that I believe are necessary to establish the required foundation for an order authorizing the acquisition of location information for the Target Cellular Telephone.

10.     Based on the facts set forth in this Affidavit, your Affiant submits there is probable cause to believe that violation of 18 U.S.C. § 1956 (money laundering) and 21 U.S.C. 843(b) (knowingly or intentionally using any communication facility in committing violation(s) of Title 21) have been committed, are being committed, and will be committed by the user(s) of the Target Cellular Telephone.   There is also probable cause to believe that the location information described herein will constitute evidence of these criminal violations, will lead to the identification of individuals who are engaged in the commission of these offenses, and will assist law enforcement in locating the user of the Target Cellular Telephone.

## CURRENT INVESTIGATION

11.     In September 2020, DEA in Phoenix began an investigation that led to the identification of an unidentified Hispanic male, known to law enforcement as "Beltran" (hereinafter, "BELTRAN") and other members of a drug trafficking organization ("DTO") operating in the Phoenix-area. The investigation has revealed that BELTRAN is a Mexico-based, poly-drug source of supply that coordinates the distribution of fentanyl pills, crystal

methamphetamine, and additional illegal drugs in Phoenix, Arizona. In addition, BELTRAN coordinates the pick-up and delivery of illegal drug proceeds in Arizona.

12.     Since September 24, 2020, investigators have received authorization from the Superior Court of Maricopa County (Arizona) to intercept wire and electronic communications over telephones used by BELTRAN. Most recently, on June 3, 2021, the Honorable Patricia Starr, Superior Court Judge, Maricopa County, authorized (1) the continued interception of communications over the cellular telephone assigned telephone number (480) 492-0684 (hereinafter, the "Beltran Telephone") used by BELTRAN, and (2) the initial interception of communications over the cellular telephone assigned telephone number (602) 706-6113, used by an unidentified male, referred to by law enforcement officers as "UM6113" (hereinafter, the "UM6113 Telephone"). During the course of the BELTRAN DTO investigation, law enforcement officers have seized approximately US$47,000 in drug-trafficking proceeds, approximately 5.2 pounds of heroin, approximately 78 pounds of methamphetamine, and approximately four (4) pounds of suspected fentanyl. Investigators are continuing to intercept communications over the Beltran Telephone and the UM6113 Telephone.

13.     Through the course of the investigation of the BELTRAN DTO, to include intercepted communications over the Beltran Telephone, investigators determined that BELTRAN (who resides in Mexico) currently directs UM6113 regarding drug transportation and money laundering activities in the Phoenix metropolitan area.

14.     During a second DEA Phoenix investigation, and physical surveillance, investigators identified Jose Jesus Carranza, known to law enforcement as "UM9740" (hereinafter, "CARRANZA"), as a suspected drug distributor and money launderer operating in the greater Phoenix area. As a result of this second DEA investigation, law enforcement officers identified the telephone number assigned to the cellar telephone utilized by CARRANZA as (602) 654-9740 (the telephone number assigned to the Target Cellular Telephone). This second DEA Phoenix investigation has identified CARRANZA's place of residence near Union Hills Road and 40th Street in Phoenix.

According to Arizona Motor Vehicles Division (AZMVD) records, CARRANZA is the registered owner of a gray 1994 Honda Accord.

15.     On June 4, 2021, at approximately 3:08 p.m., CARRANZA used the Target Cellular Telephone to speak with BELTRAN, who was using the Beltran Telephone. In summary, CARRANZA stated that he (CARRANZA) was given BELTRAN's number so that he (CARRANZA) could pick up some "papers" (suspected drug trafficking proceeds). BELTRAN asked CARRANZA to give him (BELTRAN) a "bit" (time) because he (BELTRAN) had to "go sign them and notarize them" (suspected obtain authorization to release drug-trafficking proceeds in Phoenix). CARRANZA asked BELTRAN how long that would take and stated that he (CARRANZA) was "by Union Hills and 40th Street". BELTRAN explained that it would take a while because "they" (BELTRAN DTO members in Phoenix) had to go to the "house" (suspected contraband storage facility) and count "it" (suspected drug trafficking proceeds). BELTRAN and CARRANZA agreed to talk in about two hours.

16.     Based on your Affiant's training and experience, the training and experience of other law enforcement officers participating in this investigation, your Affiant's knowledge of this investigation, and the aforementioned intercepted communications, your Affiant believes CARRANZA used the Target Cellular Telephone to coordinate the pickup of undisclosed quantity of suspected illegal drug proceeds from BELTRAN DTO associates in Phoenix. BELTRAN DTO members had to count the funds prior to delivering the same to CARRANZA. BELTRAN and CARRANZA agreed to talk in two hours.

17.     At approximately 5:28 pm, CARRANZA used the Target Cellular Telephone to speak with BELTRAN, who was using the Beltran Telephone. CARRANZA asked BELTRAN where "he" (suspected BELTRAN DTO courier) was. BELTRAN said he would "check the GPS and call [CARRANZA] back." Telephone call records provided by the service provider for the Target Cellular Telephone revealed two incoming communications from the Beltran Telephone to the Target Cellular Telephone between 5:36 pm and 5:47 pm. According to the service provider for the Target Cellular Telephone,

5

the service provider cannot intercept communications emanating from Mexico-based cellular telephones.[1] Accordingly, law enforcement officers were not able to intercept the two outgoing communications emanating from the Beltran Telephone to the Target Cellular Telephone between 5:36pm and 5:47 pm.

18.    Based on your Affiant's training and experience, the training and experience of other law enforcement officers participating in this investigation, your Affiant's knowledge of this investigation, an analysis of the aforementioned intercepted communication, and an analysis of the telephone calling records, your Affiant believes CARRANZA used the Target Cellular Telephone to ascertain the location of the BELTRAN DTO courier (later referred to as "UM6113", as described below) from BELTRAN. Based upon subsequent intercepted communications, your Affiant believes that, during the non-intercepted communications between the Beltran Telephone and the Target Cellular Telephone, BELTRAN informed CARRANZA that a BELTRAN DTO courier would meet with CARRANZA to deliver the requested drug-trafficking proceeds.

19.    At approximately 5:47 pm, UM6113 used the UM6113 Telephone to speak with BELTRAN, who was using the Beltran Telephone. UM6113 informed BELTRAN that he (UM6113) was on "32nd and Camelback" (suspected 32nd Street and Camelback Road in Phoenix). BELTRAN explained that the "guy" (suspected CARRANZA) was having car problems but would arrive in 15 minutes. UM6113 said he (UM6113) would "wait around there", and asked BELTRAN to have him (suspected CARRANZA) hurry up.

20.    At approximately 6:05 pm, UM6113 used the UM6113 Telephone to speak with BELTRAN, who was using the Beltran Telephone. UM6113 asked BELTRAN what "the guy" (suspected CARRANZA) "was in" (suspected what vehicle CARRANZA was driving). BELTRAN informed UM6113 that "he" (suspected CARRANZA) was in a "gray

---

[1] According to the service provider for the Target Cellular Telephone, the service provider can intercept communications emanating from the Target Cellular Telephone, located in the greater Phoenix area.

Honda". UM6113 confirmed that he (UM6113) was at an Italian restaurant called "Tomaso's". BELTRAN told UM6113 that he (BELTRAN) would let "him" (suspected CARRANZA) know.

21.     Based on your Affiant's training and experience, the training and experience of other law enforcement officers participating in this investigation, your Affiant's knowledge of this investigation, and the aforementioned intercepted communications, your Affiant believes that BELTRAN provided UM6113 with an update regarding CARRANZA's vehicle issues, an estimated time of CARRANZA's arrival, and a description of the vehicle that CARRANZA would be driving (a gray Honda). UM6113 informed BELTRAN that he (UM6311) was at Tomaso's restaurant (the meet location for UM6113 and CARRANZA). UM6113 agreed to wait for CARRANZA to arrive.

22.     At 6:22 pm, UM6113 used the UM6113 Telephone to speak with BELTRAN, who was using the Beltran Telephone. UM6113 told BELTRAN that "the guy" (suspected CARRANZA) was lying and he could go to hell. BELTRAN said "okay". Telephone records provided by the service provider for the Target Cellular Telephone revealed an incoming communication from the Beltran Telephone to the Target Cellular Telephone at approximately 6:24 pm, approximately one minute and 30 seconds in duration. Given that the communication emanated from the Beltran Telephone (a Mexico-based telephone), the service provider for the Beltran Telephone was not able to intercept the aforementioned communication between the Beltran Telephone and the Target Cellular Telephone at approximately 6:24 pm.

23.     Based on your Affiant's training and experience, the training and experience of other law enforcement officers participating in this investigation, your Affiant's knowledge of this investigation, a review of intercepted communications between BELTRAN and UM6113, your Affiant believes that UM6113 was upset that CARRANZA was taking a long time to arrive at the meeting location. Based upon an analysis of the telephone calling records of the Target Cellular Telephone, CARRANZA used the Target Cellular Telephone to communicate with BELTRAN (who was using the Beltran

7

Telephone) to further discuss the suspected bulk cash delivery. However, due to the inability of the service provider for the Target Cellular Telephone to intercept these communications, investigators were unable to determine the content of the conversations between BELTRAN and CARRANZA in order to confirm delivery/receipt of the suspected illegal drug-trafficking proceeds.

24.     Based on the review of all the intercepted communications between BELTRAN and CARRANZA, the user of the Target Cellular Telephone, and the analysis of the aforementioned telephone calling records, your Affiant believes that CARRANZA is a money launderer operating in the greater Phoenix, Arizona area. Your Affiant believes that CARRANZA uses the Target Cellular Telephone to facilitate money laundering and/or drug-related transactions. Your Affiant believes the tracking of Target Cellular Telephone will help investigators locate CARRANZA and identify co-conspirators working with CARRANZA to conduct money laundering and/or drug-related activity.

25.     In my training and experience, your Affiant has learned that Service Provider is a company that provides cellular telephone access to the general public. Your Affiant also knows that cellular telephone service providers have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the telephone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does

8

not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

26.    Based on my training and experience, your Affiant knows that Service Provider can collect E-911 Phase II data about the location of the Target Cellular Telephone, including by initiating a signal to determine the location of the Target Cellular Telephone on Service Provider's network or with such other reference points as may be reasonably available.

27.    Based on my training and experience, your Affiant knows that Service Provider can collect cell-site data about the Target Cellular Telephone. Based on my training and experience, your Affiant knows that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  Your Affiant also knows that wireless providers such as Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28.    Based on the foregoing, your Affiant requests that the Court issue the proposed tracking warrant, pursuant to Fed. R. Crim. P. 41 and 18 U.S.C. § 2703(c), as set forth in the attached Application for Tracking Warrant.

EFRAIN INTERIA Digitally signed by EFRAIN INTERIANO
Date: 2021.06.17 15:28:50 -07

Efrain A. Interiano
Special Agent, DEA

Subscribed and sworn to telephonically this ____17th____ day of June, 2021.  @4:23 pm

_____
HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE

9